Argued and submitted January 24, affirmed July 2, 2008

Kenneth LANDAUER,
an individual,
as conservator and guardian of
Henry Landauer and Gertrude Landauer,
*Plaintiff-Appellant,*

*v.*

Larry S. LANDAUER,
an individual;
Marilyn Landauer,
an individual;
FLN, LLC,
an Oregon limited liability company;
Randall L. Duncan,
an individual;
and Duncan Honn, P.C.,
an inactive domestic professional corporation,
*Defendants-Respondents.*

Washington County Circuit Court
C044434CV; A133214

188 P3d 406

John E. Kennedy argued the cause for appellant. With him on the briefs was Morley, Thomas & McHill LLC.

Jan K. Kitchel argued the cause for respondents Larry S. Landauer, Marilyn Landauer, and FLN, L.L.C. With her on the brief were Andrew J. Lee and Schwabe, Williamson & Wyatt, P.C.

Wendy Margolis argued the cause for respondents Randall L. Duncan and Duncan Honn P.C. With her on the brief were Thomas W. Brown and Cosgrave Vergeer Kester LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Schuman, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This case involves the adjudication of claims for civil damages for alleged elder abuse[1] and professional malpractice brought by plaintiff, as conservator and guardian on behalf of his parents, Henry and Gertrude, against his brother, Larry; Larry's wife, Marilyn; their limited liability corporation, FLN; and their attorney and the attorney's law firm.[2] At the close of plaintiff's evidence, the trial court granted defendant attorneys' motion for a directed verdict under ORCP 60 on plaintiff's elder abuse and professional malpractice claims against them on the ground that the governing statutes of limitation had expired. The remaining elder abuse claim against Larry, Marilyn, and FLN was allowed to go to the jury, which found for defendants, also on statute of limitations grounds. Plaintiff appeals and raises five assignments of error. We affirm.

Plaintiff's claims arise out of a 1996 transaction between Henry and Gertrude and Larry, Marilyn, and FLN, a transaction handled by the defendant attorneys. In 1947, Henry and Gertrude bought an 80-acre farm on which they raised five children, including Kenneth and Larry. At some point in time, Henry operated a nursery on the farm. After Henry retired in 1974, Larry operated the nursery, leasing the land from his parents. In January 1996, Henry and Gertrude sold the farm to Larry, Marilyn, and FLN. In December 2004, plaintiff brought this action alleging that defendants had acted in concert to exercise undue influence over Henry and Gertrude in a manner that induced them to sell the farm for less than its fair market value under terms that they did not comprehend and that were inconsistent with their estate planning objectives.

On appeal, plaintiff makes the following claims of error: (1) the trial court erred in excluding evidence that was relevant to when Henry or Gertrude discovered the alleged

[1] ORS 124.100 to 124.140 provide for a civil cause of action for the abuse of vulnerable persons, including the elderly.

[2] Because Kenneth brought this suit as conservator and guardian of Henry and Gertrude, we will treat Kenneth as the plaintiff for purposes of this opinion.

wrongdoings of defendants; (2) the trial court erred in excluding the testimony of witness Amy Stanek, Henry and Gertrude's granddaughter, relevant to when Henry or Gertrude discovered the alleged wrongdoing of defendants; (3) the trial court erred in excluding the testimony of a court-appointed visitor and her reports of a conversation that she had with Henry and Gertrude in 2004; (4) the trial court erred when it granted a directed verdict for defendant attorneys on plaintiff's professional malpractice claim; and (5) the trial court erred when it granted a directed verdict in favor of defendant attorneys on plaintiff's elder abuse claim.

In light of our case load and resources, our policy is to publish written opinions and discuss assignments of error in detail only when they benefit the bench, bar, and public as well as the parties. We have reviewed all of plaintiff's assignments of error and elect not to discuss the claims of error raised in his second, third, fourth, and fifth assignments of error because they were either not adequately preserved in the trial court, as required by ORAP 5.45, or because plaintiff is unable to demonstrate, as required by ORS 19.415(2), that any error resulting from the trial court's rulings substantially affected his rights.[3]

We turn our attention to the first assignment of error. Initially, we observe that the first assignment of error challenges multiple rulings involving multiple offers of proof. That format does not comply with ORAP 5.45(3)'s requirement that "[e]ach assignment of error shall identify precisely the legal, procedural, factual, or other *ruling* that is being challenged." (Emphasis added.) The grouping of a trial court's rulings under a single assignment of error hinders the

---

[3] Under *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000), a party must provide the trial court with "an explanation of the party's position that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." Also, a determination that an error did not substantially affect the rights of a party within the meaning of ORS 19.415(2) necessarily leads to the conclusion that the error was not prejudicial and therefore requires that the judgment be affirmed. *Baker v. English*, 324 Or 585, 590, 932 P2d 57 (1997). Here, that inquiry is informed by the jury's determination that the expiration date of the seven-year statute of limitation in ORS 124.130 was not extended by any continuing undue influence so as to toll the expiration of that time period before plaintiff's claims were filed in December 2004.

evaluation of each individual ruling on its merits and is a practice that should not be followed.[4] Nonetheless, we have evaluated each ruling under the first assignment as a separate ruling and conclude, for the reasons expressed above as to second, third, fourth, and fifth assignments, that they do not warrant discussion. Consequently, there is only one ruling made by the trial court that we discuss under the first assignment, as more fully explained below.[5]

Part of plaintiff's theory at trial was that Henry and Gertrude had unknowingly been induced to enter into an arrangement that deprived all of their children of an equal share of their estate upon their death as the result of a new will and trust agreement executed in 1996. During the trial, plaintiff offered testimony from Henry that he did not discover until 2004 that the 1996 transaction included the execution of a new will that created a life estate interest for Henry and Gertrude in the property, that the debt owed by Larry, Marilyn, and FLN for the property would be forgiven when he and Gertrude died, and, because they retained a life estate, the purchase price of the property had been reduced by approximately $145,000. Accordingly, under plaintiff's theory, the statutes of limitations under ORS 124.130 and ORS 12.110(1) did not begin to run until the time of Henry's discovery of those facts in 2004.[6] The trial court sustained defendants' objection to the offer of proof, and plaintiff assigns, in part, that ruling as error under his first assignment.

---

[4] ORAP 5.45(6) provides, in part, that "[i]f several assignments of error present essentially the same legal question, the argument in support of them may be combined so far as practicable."

[5] Plaintiff also argues under the first assignment that the trial court erred when it made certain pretrial rulings. However, our review of the record reveals that the trial court also granted leave to plaintiff to renew its offers of evidence during trial. It is not clear from the record that the court's pretrial ruling concerned the same testimony that plaintiff offered during the trial in response to the court's invitation, but plaintiff treats the pretrial and trial offers of proof as if they included the same evidence. Consequently, we review only the claim that the trial court erred during the trial in excluding evidence contained in plaintiff's offer of proof.

[6] ORS 124.130 provides that an action "must be commenced within seven years after discovery of the conduct described in ORS 124.105 and ORS 124.110 that gives rise to a cause of action under ORS 124.100 to 124.140." ORS 12.110(1) provides for a two-year statute of limitations regarding professional malpractice.

■   We agree with plaintiff that Henry's testimony was relevant to when he claimed he discovered the alleged elder abuse and professional malpractice and to the issue of when the statutes of limitation began to run. OEC 401. Indeed, with regard to plaintiff's elder abuse claim, the jury expressly found that the seven-year limitation period in ORS 124.130 expired before plaintiff filed this action in December 2004. But, as a general rule, the exclusion of evidence will not constitute reversible error if the jury has been given substantially the same information as was contained in the offer of proof. *See, e.g., Osborne v. Bessonette/Medford Mtrs.*, 265 Or 224, 229, 508 P2d 185 (1973); *Sneath v. Physicians and Surgeons Hospital*, 247 Or 593, 599, 431 P2d 835 (1967).

■   In the offer of proof made during trial, plaintiff asserted that Henry would testify to four matters. First, Henry would testify that he discovered for the first time in 2004 that he had executed a new will as part of the 1996 transaction. However, earlier in the trial, Henry had been asked the following questions and gave the following answers:

"[PLAINTIFF'S COUNSEL:]   At some point did you learn that you had executed a new will?

"[HENRY:]   Yes.

"[PLAINTIFF'S COUNSEL:]   When did you learn that?

"[HENRY:]   Just lately.

"* * * * *

"[PLAINTIFF'S COUNSEL:]   * * * In 1996, you didn't know that you were changing your will?

"[HENRY:]   No."

Thus, the offer of proof that Henry would testify that he first discovered in 2004 that he had a new will is cumulative of his earlier testimony that he had "[j]ust lately" learned he had executed a new will.

Second, plaintiff in his offer of proof represented that Henry would testify that he first discovered in 2004 that the

transaction included a trust that he and Gertrude created. However, earlier in the trial, Henry testified:

"[PLAINTIFF'S COUNSEL:]   Now, do you remember some discussion in '96 about a trust?

"[HENRY:]   About a trust?

"[PLAINTIFF'S COUNSEL:]   Yeah, that you were setting up a trust?

"[HENRY:]   I don't recall that."

Thus, Henry testified initially that he had no recollection of establishing a trust in 1996. His proffered testimony that he first discovered in 2004 that he had created a trust would merely have been additional evidence that he was unaware of that fact.[7]

Third, plaintiff, in his offer of proof, represented that Henry would testify that he learned for the first time in 2004 that any remaining debt from the sale of the property would be forgiven when he and Gertrude died. However, earlier in the trial, Henry testified:

"[PLAINTIFF'S COUNSEL:]   Back in 1996 * * * [d]id you know that Larry was going to be making payments for buying the farm?

"[HENRY:]   Yeah.

"[PLAINTIFF'S COUNSEL:]   What did you think would happen to those payments if * * * you and Gertrude would have passed away?

"[HENRY:]   Well, I think there was something in there about he wouldn't owe anymore; if we passed away, paid off.

"[PLAINTIFF'S COUNSEL:]   Okay. And have you learned that recently, or do you remember knowing that back in 1996?

"[HENRY:]   I don't recall, but that's why I should have had my lawyer. He would have corrected that."

---

[7] During plaintiff's case-in-chief, the thrust of Henry's testimony was that the terms of the transaction were not explained to him and that he did not read the documents that formed the transaction. Defendants offered evidence to controvert those assertions.

In other words, Henry was asked in his earlier testimony about whether he was aware that the transaction contemplated that the purchase balance on the property sale agreement would be forgiven upon his and Gertrude's deaths, and he answered that he was aware of that fact but could not "recall" when he became aware of it. Henry's testimony in plaintiff's offer of proof that he learned of that fact in 2004 constituted a different answer to the fact in dispute about when Henry learned of the debt forgiveness. Because Henry had been asked the question and had answered it previously, it was not an abuse of discretion under OEC 403 for the trial court to refuse to permit Henry to testify a second time about when he learned of the existence of the debt forgiveness provision, at least without some additional foundation by plaintiff demonstrating why Henry's answer would be different if given the opportunity to testify a second time.

Finally, plaintiff asserted in his offer of proof that, if permitted by the trial court, Henry would testify that he discovered for the first time in 2004 that the purchase price of the property had been reduced by approximately $145,000 because of the life estate that he and Gertrude retained as part of the transaction. However, earlier in the trial, Henry testified:

"[PLAINTIFF'S COUNSEL:] * * * What is your understanding of a 'lifetime lease'?

"[HENRY:] That we get to live in the house the rest of our li[ves].

"* * * * *

"[PLAINTIFF'S COUNSEL:] Did you know you were paying about $140,000 for a lifetime lease?

"[HENRY:] No.

"[PLAINTIFF'S COUNSEL:] And did Larry's attorney ever explain that to you?

"[HENRY:] No, they didn't explain it very much, just (inaudible)."

Assuming without deciding that the proffered testimony is relevant to when the statute of limitations ran on plaintiff's elder abuse claim that was submitted to the jury,

Henry was asked in his prior testimony whether he was aware in 1996 that "he was paying for a lifetime lease[,]" and he answered, "No." The fact in dispute of which the testimony is probative is Henry's awareness of the existence of the life estate provision in the transaction. Plaintiff's offer of Henry's testimony on that subject matter constituted an apparent explanation of why he did not know that he was "paying for a lifetime lease[,]" *i.e.*, because he did not learn of that fact until 2004. Again, the exclusion of evidence will not constitute reversible error if, as here, the jury had substantially the same evidence before it when it decided that the statute of limitations expired before plaintiff commenced his action.

Affirmed.